# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RASHA MUZAHEM ALWAN AL SALIHI,<br><br>         Plaintiff,<br><br>v.<br><br>ANTONY J. BLINKEN, *Secretary of State*, et al.,<br><br>         Defendants. | Case No. 23-cv-718-MMA-AHG<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 20] |

  On August 21, 2023, Plaintiff Rasha Muzahem Alwan Al Salihi ("Plaintiff") filed a First Amended Complaint against Secretary of State Antony Blinken, Assistant Secretary of State for Consular Affairs Rena Bitter, Secretary of State of the Department of Homeland Security Alejandro Mayorkas, and Director of United States Citizenship and Immigration Services Ur Jaddou (collectively, "Defendants"), seeking to have her family reunification application adjudicated. *See* Doc. No. 17 ("FAC"). On September 5, 2023, Defendants filed a motion to dismiss the First Amended Complaint. *See* Doc. No. 20. Plaintiff filed an opposition, to which Defendants replied. *See* Doc. Nos. 23,

24.[1]  The Court took the motion under submission without oral argument pursuant to Civil Local Rule 7.1.d.1.  *See* Doc. No. 25.  For the reasons set forth below, the Court **DENIES** Defendants' motion.

## I. BACKGROUND[2]

Plaintiff, her husband Naser Samer Naji, and their daughter are Iraqi nationals who applied for refugee status in the United States by filing I-590 applications with the United States Citizenship and Immigration Services ("USCIS").  FAC ¶¶ 12–13.  Plaintiff and her daughter's refugee applications were approved on May 11, 2015, and Mr. Naji's application was denied.  *Id.* ¶ 14.  Plaintiff and her daughter arrived in the United States as refugees in August 2017.  *Id.* ¶ 16.  Mr. Naji remained in Iraq, where he continues to reside today.  *Id.* ¶ 19.  Shortly after Plaintiff arrived in the United States, Mr. Naji was granted a re-interview with respect to his refugee application.  *Id.* ¶ 17.  To date, that re-interview has not occurred.  *Id.* ¶ 18.

On October 3, 2017, Plaintiff submitted an I-730 follow-to-join refugee petition on behalf of her husband, Mr. Naji (the "Petition").  *Id.* ¶ 43.  In April 2021, USCIS issued a "Notice of Intent to Deny" the Petition (the "NOID").  *Id.* ¶ 45.  In July 2021, Plaintiff submitted a response to the NOID.  *Id.* ¶ 52.

Having received no response, on April 19, 2023, Plaintiff initiated this action.  *See* Doc. No. 1.  On July 6, 2023, USCIS notified Plaintiff that it had conditionally approved the Petition and had forwarded it to the Department of State National Visa Center ("NVC"), which would then notify the appropriate U.S. Embassy or Consulate.  FAC ¶¶ 3, 58.  On August 21, 2023, Plaintiff filed the First Amended Complaint.  *See* FAC.

---

[1] Plaintiff is reminded that "the Civil Local Rules require that briefs, including footnotes, be 'no smaller than 14-point standard font (e.g. Times New Roman).'"  CivLR 5.1.a.

[2] Reviewing Defendants' motion to dismiss, the Court accepts as true all facts alleged in the First Amended Complaint and construes them in the light most favorable to Plaintiff.  *See Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d. 1152, 1157 (9th Cir. 2017).

## II. LEGAL STANDARDS

### A.   Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). Without subject matter jurisdiction, a federal court is without "power" to hear or adjudicate a claim. *See Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)); *Kokkonen*, 511 U.S. at 377. The plaintiff bears the burden of establishing the Court's jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006) (citation omitted).

Pursuant to Rule 12(b)(1),[3] a party may seek dismissal of an action for lack of subject matter jurisdiction. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Jurisdictional attacks under Rule 12(b)(1) can be either facial or factual. *White*, 227 F.3d at 1242. A facial attack on jurisdiction asserts that the allegations in a complaint are insufficient to invoke federal jurisdiction, whereas a factual attack disputes the truth of the allegations that would otherwise confer federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

The moving party can convert its "motion to dismiss into a factual motion by presenting affidavits or other evidence." *Id.* In resolving a factual attack, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Id.* (citing *White*, 227 F.3d at 1242). "Once the moving party has converted the motion to dismiss into a factual

---

[3] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

motion . . . the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (internal quotation marks omitted) (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir.2003)); *see also Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist.").

**B.    Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Typically, if a party submits evidence from outside

the pleadings in support of a motion to dismiss under Rule 12(b)(6), and a court relies on that evidence, the motion must be converted into a motion for summary judgment. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).  However, "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Lee*, 250 F.3d at 689.

### III. DISCUSSION

Defendants move to dismiss Plaintiff's claims against Defendants Mayorkas and Jaddou for lack of subject matter jurisdiction.  *See* Doc. No. 20 at 5.  Defendants also argue that Plaintiff fails to state claims against the remaining Defendants, Blinken and Bitter.  *Id.* at 6.  The Court address each argument in turn.

**A.    Subject Matter Jurisdiction**

Plaintiff pleads that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as defendant), and 28 U.S.C. § 1361 (mandamus).  Here, Plaintiff's claims are for violations of the Administrative Procedure Act, 5 U.S.C. § 555, and the Due Process Clause of the Fifth Amendment.  She also seeks a writ of mandamus pursuant to 28 U.S.C. § 1651.  The Court therefore finds that it has original jurisdiction over this action.

Defendants do not argue otherwise.  Instead, Defendants contend that Plaintiff's claims against Mayorkas and Jaddou are moot and therefore that the Court lacks subject matter jurisdiction over them.  *See* Doc. No. 20 at 5.  As Plaintiff correctly notes, Defendants' Rule 12(b)(1) argument is a facial attack on the Court's jurisdiction because Defendants base their argument on the fact that USCIS has approved the Petition and forwarded it to the NVC, which Plaintiff pleads in her First Amended Complaint.  *See* FAC ¶ 58.

Federal courts are "without power to decide questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).  The inability to review moot cases derives from Article III's requirement that a "case or controversy" exist between

the parties. *DeFunis*, 416 U.S. at 316. A case is moot "if subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). A defendant's voluntary cessation of allegedly wrongful conduct is unlikely to moot a case. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden" of showing the wrongful conduct will not recur. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

     Defendant Mayorkas is the Secretary of the Department of Homeland Security ("DHS"). FAC ¶ 8. According to Plaintiff, DHS oversees USCIS, which is responsible for adjudicating the Petition. *Id.* Defendant Jaddou is the Director of USCIS and therefore directly oversees USCIS's operations, including the processing of the Petition. *Id.* ¶ 9. As noted above, USCIS has conditionally approved the Petition. *Id.* ¶¶ 33, 58. However, Plaintiff maintains that USCIS's conditional approval has not resolved her claims. Plaintiff explains that "[o]nce USCIS conditionally approves the I-730 petition, it sends the conditionally approved petition to the National Visa Center within the State Department." *Id.* ¶ 33. From there, the National Visa Center forwards the Petition "to an overseas post, which 'act[s] as agents of USCIS' for a determination on whether the beneficiary is admissible." *Id.* ¶ 34 (quoting 9 FAM 203.5-2(a)(6)). One of two things will then occur. First, "if the overseas post determines that the beneficiary is admissible, it must issue a "travel packet and a boarding foil that allow the beneficiary to travel to the United States." *Id.* ¶ 39. Alternatively, "[i]f the overseas post determines that the beneficiary is not admissible or uncovers information suggesting that the I-730 petition should not have been conditionally approved, the post must return the I-730 petition to USCIS for reconsideration and possible denial" in a process known as "consular return." *Id.* ¶ 37.

     While the parties hotly dispute the breakdown of the process, Plaintiff's description is at the very least generally supported by the governing manual, as will be

discussed below. *See* 9 FAM 203.5, 203.6. Regardless, Plaintiff has pleaded that post-conditional approval processing has not occurred, and a final determination has not been made and Defendants do not genuinely argue otherwise. Thus, the "personal interest" that Plaintiff asserts in her First Amended Complaint—the final adjudication of her Petition, *see, e.g.*, *id.* ¶ 4—continues to exist. *See Friends of the Earth*, 528 U.S. at 189 ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (internal citation and quotation marks omitted).

It is undisputed that the remaining process has been "outsource[d]" to the State Department because USCIS does not maintain a field office in Iraq. *See* FAC ¶ 28; *see also* Doc. No. 20 at 4. Defendants therefore argue that DHS and its component agency, USCIS, are no longer involved and therefore no relief can be granted against them. *See* Doc. No. 20 at 4. But Defendants' position is inconsistent with the governing manual. The section of the Foreign Affairs Manual that sets forth the policies and procedures for "Follow-To-Join Asylees and Refugees" applications—which includes I-730 petitions—plainly states that "[a]s a matter of law, authority to adjudicate and process refugee and affirmative asylum applications, including Form I-730 follow-to-join derivatives of asylees and refugees, rests exclusively with DHS." 9 FAM 203.5-2(a)(1) (citing INA §§ 207, 208 and 6 U.S.C. § 271). So while Defendants note that USCIS has delegated the authority to conduct this remaining processing to consular officers, 9 FAM 203.5-2(b)(3)(b), as Plaintiff sets forth in her First Amended Complaint, *see* FAC ¶ 34, "[c]onsular officers act as agents of USCIS" during this process, 9 FAM 203.5-2(a)(6). As a result, Defendants' contention that relief cannot be had against Mayorkas (DHS) and Jaddou (USCIS) fails.

Defendants' citations do not change this result. The parenthetical quotation from *United States v. Hovsepian*, 359 F.3d 1144, 1161 (9th Cir. 2004), *see* Doc. No. 20 at 5, involves the Ninth Circuit's discussion of events in a different case, *Sze v. INS*, 153 F.3d 1005 (9th Cir. 1998). *Sze* plainly involved naturalization applications that had reached

final adjudication: the plaintiffs had become citizens and therefore the Ninth Circuit found that it lacked jurisdiction over the appeal. 15 F.3d at 1008, 1010. It is undisputed that Plaintiff's Petition has not reached a final adjudication: Mr. Naji has not been issued a travel packet and boarding foil and has not been admitted by Customs and Border Protection, nor has USCIS denied the Petition on consular return. And the cases of *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) merely set forth the doctrine of mootness.

The Court has scoured the available caselaw involving I-730 petitions and has found no case on point. One case from the District of Connecticut and a second from the District of Maryland involved dismissal of complaints against DHS and USCIS officials where the petitions had reached a final adjudication: approval. *See You Zheng Huang v. Nielsen*, No. 3:16-cv-1634 (VAB), 2018 U.S. Dist. LEXIS 94982, at *3 (D. Conn. June 6, 2018); *He Tai Liu v. Nielsen*, No. GJH-19-840, 2020 U.S. Dist. LEXIS 12039, at *2 (D. Md. Jan. 24, 2020). A New York district court dismissed a complaint as moot where the I-730 petition was denied. *See Kuai v. Nielsen*, 365 F. Supp. 3d 292, 295 (E.D.N.Y. 2019). But the Court has not found a single case dismissing a complaint or claims against DHS and USCIS as moot where an I-730 petition had been conditionally approved but not reached final adjudication.

There are several cases, however, that discuss the concept of final adjudication in the context of the doctrine of consular nonreviewability involving immigration applications other than an I-730 petitions. *See, e.g.*, *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020); *Fakhimi v. Dep't of State*, Civil Action No. 23-1127 (CKK), 2023 U.S. Dist. LEXIS 189417, at *12 (D.D.C. Oct. 23, 2023); *Afghan & Iraqi Allies v. Pompeo*, Civil Action No. 18-cv-01388 (TSC), 2019 U.S. Dist. LEXIS 14465, at *30 (D.D.C. Jan. 30, 2019). All of these cases involved some combination of both State Department and DHS officials as defendants. And all cases concluded that where an application has not reached a *final* adjudication—either approval or denial—the plaintiffs had standing to pursue APA and mandamus claims against the defendants. While these

cases concerned Special Immigrant Visas, which involved a fourteen-step process, they nevertheless lend assistance to Plaintiff's position that until the process is completed, the Petition has not been finally adjudicated and her claims against DHS and USCIS officials are not moot. In any event, Defendants do not point to a single case concluding otherwise.

Moreover, while *Doe v. Risch*, 398 F. Supp. 3d 647 (N.D. Cal. 2019), did not involve a Rule 12(b)(1) analysis on mootness, the Court finds it persuasive. In *Risch*, the plaintiffs' I-730 petition was preliminarily approved by USCIS and had been forwarded to the appropriate embassy. *Id.* at 653. Following the interview, the petition was "placed in administrative processing" where it remained for two and a half years. *Id.* at 659. Defendants appear correct that the asserted delay in *Risch* was attributable to the State Department, *see id.* at 652, 657 (assigning the delay to completing the security vetting process, authorized to the State Department). But this is a point without any meaningful distinction on the issue of mootness. In *Risch*, judgment was granted in the plaintiffs' favor against *all defendants*, which included not just State Department and consulate officials but the director of USCIS and DHS. *Id.* at 659 n.2. This strongly if not conclusively demonstrates that Plaintiff may still obtain relief from Mayorkas and Jaddou and that her claims against them are not moot.

In light of DHS's exclusive authority to adjudicate the Petition and control over the State Department, and in the absence of any binding authority to the contrary, the Court finds that Plaintiff's claims against Mayorkas and Jaddou are not moot. Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's claims against them for lack of jurisdiction.[4]

---

[4] Because the Court finds that USCIS's conditional approval of the Petition does not moot Plaintiff's claims against Mayorkas and Jaddou, the Court need not reach the remaining arguments with respect to voluntary cessation.

B.     **Failure to State a Claim**

Next, Defendants argue that Plaintiff fails to state a claim against Defendants Blinken and Bitter.[5] *See* Doc. No. 20 at 6–8. Blinken is the Secretary of State and Bitter is the Assistant Secretary of Consular Affairs, a component agency of the State Department. *See* FAC ¶¶ 6–7.

As an initial matter, Defendants contend that the status of the Petition has changed since Plaintiff filed her First Amended Complaint.[6] *See* Doc. No. 20 at 6; Doc. No. 20-1 ¶ 4. But their position is beyond the scope of the First Amended Complaint and Defendants do not ask the Court to take judicial notice of this or any additional information.

Under the APA, a court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Similarly, under the Mandamus Act, the court has power to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Although the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under [the Mandamus Act], 'in essence,' as one for relief under § 706 of the APA." *Indep. Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n. 4. (1986)). Where a plaintiff seeks identical relief under the APA and the Mandamus Act, courts routinely elect to analyze both claims under the APA only. *See, e.g.*, *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022); *Castaneda v. Garland*, 562 F. Supp. 3d 545, 561 (CD. Cal. 2021).

---

[5] Defendants do not challenge the plausibility of Plaintiff's claims against Defendants Mayorkas and Jaddou pursuant to Rule 12(b)(6), nor do Defendants mention Plaintiff's Fifth Amendment Due Process claim in their motion. Accordingly, the Court only considers whether Plaintiff has stated her APA and Mandamus Act claims against Bitter and Blinken.

[6] According to Defendants, the NVC shipped the Petition and accompanying documentation to the U.S. Embassy in Ankara on August 29, 2023. Doc. No. 20-1 ¶ 4.

To state a claim for unreasonable delay under the APA, "a petitioner must show that (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty." *Liu v. Denayer*, No. CV 21-6653-DMG (MRWx), 2022 U.S. Dist. LEXIS 221444, at *5 (C.D. Cal. July 18, 2022) (internal citation omitted).

Plaintiff pleads that "[b]enefits under the follow-to-join family reunification application process for eligible beneficiaries are non-discretionary." FAC ¶ 31. Plaintiff appears correct in principle. Title 8 of the United States Code, section 1157(c)(2)(A) provides, in relevant part,

> A spouse or child . . . of any refugee who qualifies for admission under paragraph (1) **shall**, . . . be entitled to the same admission status as such refugee if accompanying, or following to join, such refugee and if the spouse or child is admissible . . . .

8 U.S.C.S. § 1157(c)(2)(A) (emphasis added). However, qualified individuals having a nondiscretionary entitlement to benefits is not the same as an agency having a nondiscretionary duty to act. As the Ninth Circuit explained in *Vaz*,

> . . . "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Thus, a court may compel agency action under the APA when the agency (1) has "a clear, certain, and mandatory duty," *Plaskett*, 18 F.4th at 1082, and (2) has unreasonably delayed in performing such duty, *see* 5 U.S.C. § 706(1).

*Vaz*, 33 F.4th at 1135–36. To this point, Plaintiff cites to, among other things, 8 C.F.R. § 2707.7. *See* FAC ¶ 66. This regulation provides, in relevant part, that where, as is the case here, a follow-to-join spouse is outside the United States, USCIS "will notify the refugee of such approval" and "will send the approved request to the Department of State for transmission to the [appropriate] U.S. Embassy or Consulate." 8 C.F.R. § 207.7(f)(2). Alternatively, if the follow-to-join spouse "is found to be ineligible for derivative status, a written notice explaining the basis for denial shall be forwarded to the principal

refugee." *Id.* § 207.7(g). The Foreign Affairs Manual, as noted above, sets forth numerous duties, dispersed among DHS, USCIS, and the State Department, with respect to the processing and ultimate approval or denial of an I-730 petition.

While Defendants argue they have no duty to schedule a consular interview within a particular time, *see* Doc. No. 20 at 6, Defendants have a statutory duty to perform the discrete actions they are assigned within a reasonable time. *See* 5 U.S.C. § 555(b). Regulation 207.7 does not appear to assign any nondiscretionary duty to act to the State Department, but the governing manual does identify various nondiscretionary actions. To name just a few, "consular officers are responsible for interviewing the beneficiaries of Form I-730s to verify the identity and the relationship to the petitioner, as well as determining if any inadmissibilities or bars to derivative asylum or refugee status exist." 9 FAM § 203.6-2(d). "If case is complete and there are no unresolved issues, process to the case to conclusion," *id.* § 203.6-5(d); "complete a copy of the V93 Notice of Conditional Approval to Travel Letter, *id.* § 203.6-5(f); and "boarding foil [ ], placed in a passport or other travel document [ ], and a travel packet [ ] must be prepared for each beneficiary found eligible to travel to the United States by a consular officer," *id.* § 203.6-8(b)(1)(a). Alternatively, for a beneficiary not approved to travel to the United States, the consular officer "must inform the beneficiary in writing (with a cc to the petitioner) that they were not approved to travel to the United States and that their case is being returned to USCIS for further action." *Id.* § 203-6-9(b)(1). Defendants do not dispute that the State Department has not yet performed any of these actions. Consequently, it is not clear from the face of Plaintiff's First Amended Complaint that Defendants have performed their nondiscretionary duties.

Even assuming the Court accepted Defendants' evidence at this stage via judicial notice, *see* Doc. No. 20-1, the Court turns back to the *Risch* case. The facts in *Risch* are similar to the present case, the only notable difference being that the I-730 beneficiary in *Risch* had completed his interview whereas Mr. Naji has not yet been scheduled for an interview. *Risch*, 398 F. Supp. 3d at 653. To that end, the lengthy delay in *Risch*

seemingly occurred at the hand of the State Department, while here Plaintiff's asserted delay relates, at this time, to the pre-conditional approval phase and therefore is more plausibly attributable to USCIS. But that judgment on the same claims was entered in favor of the *Risch* plaintiff and against, again, *all defendants*—State Department and consulate officials as well as the director of USCIS and DHS, *see id.* at 659 n.2—persuades the Court that Plaintiff has plausibly stated her claims against Defendants here.

Having concluded that Plaintiff has duly pleaded a failure by Defendants to take nondiscretionary action, the Court turns to whether Plaintiff has plausibly pleaded that the delay is unreasonable. To evaluate whether an agency's delay is unreasonable under the APA, the Court turns to the six-factor balancing test set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*"). See *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason[;]
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[;]
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake[;]
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;]
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay[;] and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 507 n.7 (quoting *TRAC*).

"Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Gonzalez v. United States Dep't of Homeland Sec.*, 500 F. Supp. 3d 1115, 1129–30 (E.D. Cal. 2020) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D. D.C. 2003)); *see also Yu v. Brown*, 36 F. Supp. 2d 922, 935 (D.N.M. 1999) ("What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case."). Having reviewed the First Amended Complaint, and based upon the parties' briefing, *see* Doc. Nos. 20 at 8, 23 at 21–23, the Court finds that the six-year delayed asserted here is plausibly unreasonable. The ultimate determination of whether the *TRAC* factors are satisfied is not capable of resolution on the pleadings and without further evidence and briefing. Accordingly, the Court **DENIES** Defendants' motion to dismiss on this basis.

### IV. CONCLUSION

Based upon the foregoing, the Court **DENIES** Defendants' motion to dismiss. Defendants must file an answer to the First Amended Complaint within **twenty-one (21) days** of the date of this Order.

**IT IS SO ORDERED**.

Dated:  November 17, 2023

HON. MICHAEL M. ANELLO
United States District Judge